IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MCZ DEVELOPMENT CORP., SHEFFIELD DEVELOPMENT PARTNERS, LLC, GOLDEN CANYON PARTNERS, LLC, and FLORENCE DEVELOPMENT PARTNERS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DICKINSON WRIGHT, PLLC and DENNIS J. WHITTLESEY,<br><br>Defendants. | No.<br><br>Judge:<br><br>Magistrate Judge:<br><br>Trial By Jury Requested |

## COMPLAINT

NOW COME Plaintiffs, MCZ DEVELOPMENT CORP., SHEFFIELD DEVELOPMENT PARTNERS, LLC, GOLDEN CANYON PARTNERS, LLC and FLORENCE DEVELOPMENT PARTNERS, LLC, by and through their attorney, Jeffrey J. Asperger of Asperger Associates LLC, and complains of Defendants, DICKINSON WRIGHT, PLLC and DENNIS J. WHITTLESEY, as follows:

## THE PARTIES

1. MCZ Development Corp. ("MCZ") is an Illinois corporation with its principal place of business in Illinois. MCZ is a citizen of Illinois pursuant to 28 U.S.C. § 1332(c).

2. MCZ is in the business of investing in and developing real estate.

3. Sheffield Development Partners, LLC ("Sheffield Development") is an Illinois limited liability company. Sheffield Development's members, James Haft and Michael Lerner, are citizens of Illinois. Sheffield Development is a citizen of Illinois pursuant to 28 U.S.C. § 1332(c).

4. Sheffield Development is in the business of investing in and/or developing real estate and acting as a member of Golden Canyon Partners, LLC.

5. Golden Canyon Partners, LLC ("Golden Canyon") is a Nevada limited liability company. Golden Canyon's members are Sheffield Development and Obadiah Development Group, Inc. ("Obadiah"). Obadiah is a Florida corporation with its principal place of business in Florida. Golden Canyon is a citizen of Illinois and Florida pursuant to 28 U.S.C. § 1332(c).

6. Golden Canyon is in the business of developing a certain tract of property in Oklahoma and pursuing gaming opportunities.

7. Florence Development Partners LLC ("Florence Development") is an Oklahoma limited liability company. Florence Development's members are Golden Canyon, Marcella Giles and Wynema Capps. Marcella Giles and Wynema Capps are both citizens of Oklahoma. Florence Development is a citizen of Illinois, Florida and Oklahoma pursuant to 28 U.S.C. § 1332(c).

8. Florence Development is in the business of developing and operating gaming facilities in Oklahoma.

9. Dickinson Wright, PLLC ("Dickinson Wright") is a Michigan professional limited liability company with its principal offices in Michigan. Dickinson Wright also has offices in Arizona, Nevada, Ohio, Tennessee, Washington, D.C. and Toronto, Canada. Based on information and belief, the states of citizenship for Dickinson Wright's members are as listed on Exhibit A ("Dickinson Wright PLLC – Member Listing"), and include Arizona, Michigan, Nevada, Ohio, Tennessee and the District of Columbia. Dickinson Wright is a citizen of Arizona, Michigan, Nevada, Ohio, Tennessee and the District of Columbia pursuant to 28 U.S.C. § 1332(c).

10. Dickinson Wright is a law firm with nearly 300 attorneys and is in the business of providing legal services throughout the United States, including in the Northern District of Illinois.

11. Based on information and belief, Dennis J. Whittlesey is an individual who is a citizen of Washington, D.C.

12. Dennis J. Whittlesey is a licensed attorney who represents clients and appears in tribunals throughout the United States, including in the Northern District of Illinois. At all relevant times, Dennis J. Whittlesey was and is a member and duly authorized agent of Dickinson Wright.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, as this action contains parties of diverse states and an amount in controversy exceeding $75,000, exclusive of interest and costs of this litigation.

14. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b) because the underlying contract for legal services was formed in the Northern District of Illinois, the relevant legal advice was delivered in the Northern District of Illinois, decisions in reliance of the legal advice were made in the Northern District of Illinois, invoices for legal services were delivered in the Northern District of Illinois and damages were sustained in the Northern District of Illinois.

## PROFESSIONAL NEGLIGENCE

15. On or about December 1, 2009, Dickinson Wright and Dennis J. Whittlesey (collectively "Defendants") engaged MCZ as a client regarding the development of an Indian casino gaming project in Oklahoma (the "Project").

16. Between December 1, 2009 and September 21, 2011, the scope of Defendants' representation evolved to a point where they agreed to and did provide legal services to not only MCZ, but also Sheffield Development, Golden Canyon and Florence Development, regarding the Project. Defendants knew of and agreed to this broadened scope of their representation.

17. At all relevant times herein, Defendants held themselves out to Plaintiffs as experienced, professional and competent attorneys to handle the various legal needs of Plaintiffs in relation to the Project.

18. As part of the engagement, Defendants agreed to and did provide professional legal advice and services to Plaintiffs which included, but were not limited to, assessing the legal and regulatory requirements for pursuing gaming at the site, advising on the legal and regulatory requirements, drafting legal documents, meeting with regulators, pursuing legal and regulatory approval of the Project and advising Plaintiffs with respect to the development of the gaming site.

19. At all relevant times, Defendants knew Plaintiffs were relying on the opinions and advice of Defendants to decide whether and when to make monetary investments and expenditures to begin developing the site for the purposes of casino gaming.

20. At all relevant times, Defendants knew that Plaintiffs would be expending significant amounts of money in reliance on Defendant's advice.

21. From December 2009 through September 21, 2011, Defendants assisted and advised Plaintiffs by organizing and structuring limited liability company vehicles, preparing and/or reviewing leases, joint venture agreements, preparing legal opinions and memoranda and other documents and filings that would enable Plaintiffs and the tribal gaming commission

4

involved in the Project (collectively, with all relevant tribal authorities, the "Tribe") to develop, finance, and operate the Project.

22. On May 4, 2011, Plaintiffs inquired of Defendants the nature of any issues which might preclude the proposed gaming project from successfully moving forward. Defendants responded by assuring Plaintiffs that they believed any issues in this regard would be resolved in Plaintiffs' favor, and that negative rulings by the relevant federal agencies would not prevent the proposed casino from opening and operating. Defendants further advised that even a legal challenge in court would not result in an injunction being entered during the course of the litigation.

23. On or about August 17, 2011, the Tribe issued a gaming license to Florence for the Project. At that time, Defendants advised Plaintiffs that Florence had the right to conduct Class II and Class III gaming at the Project without the requirement of any further governmental approvals or permits.

24. On September 22, 2011, Defendants issued a written opinion letter to Plaintiffs which stated that Defendants "have formed the opinion that the August 17, 2011 gaming licensure concluded the applicable regulatory process and Class II and Class III gaming may now be conducted" at the casino.

25. At various times prior to commencement of construction activities Defendants advised Plaintiffs that there could not be any legal challenge to the license by a non-tribal party.

26. Having received these representations and assurances from Defendants, and in reliance on these representations and assurances from Defendants, Plaintiffs hired personnel, entered construction, equipment, consulting and other contracts, commenced construction activities on site, and began expending significant amounts of money on the development,

equipping, staffing and construction of the casino gaming facility. Relying on these representations and assurances, Plaintiffs also incurred significant loan obligations to fund the Project.

27. At all relevant times, Defendants knew Plaintiffs were expending funds in reliance on Defendants' representations and assurances.

28. Prior to December 9, 2011, Defendants knew that the NIGC was also going to assess the adequacy of tribal jurisdiction over the casino gaming site. However, at all times prior to December 9, 2011, Defendants repeatedly assured Plaintiffs that the necessary jurisdiction existed, and that even a negative decision on jurisdiction would not prevent Plaintiffs from opening and operating a casino.

29. Relying on these repeated representations and reassurances from Defendants, Plaintiffs continued to expend significant funds and undertake significant loan obligations to develop and construct the casino gaming facility.

30. On January 6, 2012, Defendants advised Plaintiffs that Oklahoma's Attorney General was interested in reviewing Defendants' opinion regarding the adequacy of tribal jurisdiction. At that time, Defendants assured Plaintiffs that nothing more was required for the Attorney General to conclude that the appropriate tribal jurisdiction existed. At no time did Defendants advise Plaintiffs that the Oklahoma Attorney General could take legal actions to stop the development and construction of the Project or otherwise prevent Plaintiffs from opening and operating the casino.

31. On February 8, 2012, the State of Oklahoma filed a complaint against Florence Development and others claiming that the requisite tribal jurisdiction and governmental power over the casino gaming site did not exist. The State of Oklahoma sought the following relief: 1)

a declaration by the Court that the defendants in that case lack the authority to construct or operate a gaming facility; 2) a declaration by the Court that the requisite jurisdiction and governmental powers to construct or operate gaming do not exist; 3) a preliminary injunction enjoining the defendants from constructing or operating a gaming facility; and 4) a permanent injunction enjoining the defendants from constructing or operating a gaming facility.

32. On May 18, 2012, the Court made an oral pronouncement granting the State of Oklahoma's motion for a preliminary injunction and enjoining the defendants from developing, constructing and operating a gaming facility at the site.

33. On May 25, 2012, the NIGC issued a memorandum concluding that the requisite tribal jurisdiction over the gaming site does not exist.

34. On July 20, 2012, the Court entered a written order finding that the construction and operation of the gaming facility violates federal law, and preliminarily enjoining the development, construction and operation of a gaming facility.

35. On August 20, 2012, the defendants in that case filed a notice of appeal. The appeal of the preliminary injunction is currently pending.

36. After the lawsuit was filed by the State of Oklahoma, and throughout the course of that litigation, Defendants repeatedly reassured Plaintiffs that their legal position was sound, that they would prevail in the lawsuit and that the development and construction of the casino gaming facility should continue.

37. Relying on these repeated representations and reassurances from Defendants, Plaintiffs continued to expend significant funds and undertook significant loan obligations to develop and construct the casino gaming facility up until the entry of the preliminary injunction.

38. Throughout the course of their representation of Plaintiffs, Defendants owed them a fiduciary duty, owed a duty to possess and apply the knowledge, skill and care ordinarily used by reasonably well-qualified attorneys, and owed a duty to represent and advise Plaintiffs in a non-negligent, responsible, and competent fashion.

39. Notwithstanding the aforementioned duties owed by Defendants to Plaintiffs, Defendants' actions fell below the standard of care, and Defendants breached a duty owed to Plaintiffs by committing one or more of the following negligent acts and/or omissions:

   a. Failing to advise Plaintiffs of the potential legal actions that could be taken to block the development, construction and/or operation of the gaming facility;

   b. Negligently advising Plaintiffs that Class II and Class III gaming could be conducted at the casino site;

   c. Negligently advising Plaintiffs that the requisite tribal jurisdiction existed;

   d. Negligently advising Plaintiffs that nothing more was required for the Attorney General to conclude that the appropriate tribal jurisdiction existed;

   e. Negligently advising Plaintiffs that a negative decision on jurisdiction would not prevent Plaintiffs from opening and operating a casino;

   f. Failing to advise Plaintiffs to delay the expenditure of significant monies and the undertaking of debt until challenges to the Project were resolved;

   g. Failing to advise Plaintiffs to delay the expenditure of significant monies and undertaking of debt until challenges to tribal jurisdiction were resolved;

   h. Negligently providing Plaintiffs with repeated assurances that the State of Oklahoma would be unsuccessful in its lawsuit seeking to enjoin the development, construction and operation of the gaming facility; and

   i. Failing to adequately advise Plaintiffs of the potential risks of moving forward with the development and construction of the gaming facility.

40. As a direct and proximate result of Defendants' breach of a duty owed to Plaintiffs, Plaintiffs sustained and continue to sustain damages which include the following: (1) the loss of money expended in developing and constructing the gaming facility before they were enjoined from doing so; (2) the loss of money associated with the loan obligations they undertook in developing and constructing the gaming facility; and (3) the fees and expenses they incurred in association with defending the lawsuit initiated by the State of Oklahoma and appealing the District Court's ruling.

WHEREFORE, Plaintiffs request that this Court award damages in an amount in excess of the jurisdictional requirements of this Court. Plaintiffs further request any costs, interest and attorneys' fees available to them in relation to this action, together with any such additional relief this Court deems just and proper. Plaintiffs request a trial by jury.

Dated: September 6, 2013

Respectfully submitted,

**PLAINTIFFS**

By: /s/ Bary L. Gassman

Jeffrey J. Asperger
Bary L. Gassman
ASPERGER ASSOCIATES LLC
180 North Stetson Avenue, Suite 3050
Chicago, IL 60601
Tel: (312) 856-9901
Fax: (312) 856-9905
jasperger@asplaw.net
bgassman@asplaw.net
*Attorney for Plaintiffs*